# IN THE COURT OF APPEALS OF IOWA

No. 23-0292
Filed May 24, 2023

IN THE INTEREST OF J.H. and T.H. Jr.,
Minor Children,

A.H., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Story County, Stephen A. Owen,

District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Chad E. Schneider of Hastings & Gartin Law Group, Ames, for appellant

mother.

        Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney

General, for appellee State.

        Shannon M. Leighty of the Public Defender's Office, Nevada, attorney and

guardian ad litem for minor children.


        Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals the termination of her parental rights to two children. She claims there is insufficient evidence to support a statutory ground for termination, that termination is not in the children's best interests, and that the court should decline to terminate based on her close bond with the children. We find clear and convincing evidence in this record to support termination. Termination is in the children's best interests. We decline to apply an exception to termination. Accordingly, we affirm.

## I.      Background Facts & Proceedings

The mother, the father, J.H., born in December 2021, T.H., born in April 2020, and their three siblings[1] most recently came to the attention of the Department of Health and Human Services (HHS) in January 2022. The family was well known to the department—they were the subject of over fifty assessments conducted by the department since 2014. Before January 2022, there were at least seven sets of founded child abuse reports related to the parents, mostly for denial of critical care, failure to provide proper supervision, and failure to provide adequate food. T.H. was adjudicated to be a child in need of assistance (CINA) and removed from parental custody in July 2020. He remained in a foster care placement until March 2021. The CINA case was closed that August. Between August and January 2022, the foster family remained engaged in caring for T.H., including ensuring he attended medical appointments. Without the prior foster

---

[1] The mother has a sixth child who does not reside with her. The mother has visitation rights to the child, so the child is present during visits with the other children. The other three siblings were removed from the mother's custody in June 2022 and remained in foster care at the time of the termination hearing.

placement's involvement, there were concerns that the child would not attend medical appointments or be given prescribed medications.

In January 2022, the family was again investigated because of concerns that the parents were not providing adequate medical care for T.H. The child had persistent ear and eye infections that were not being addressed. He was also exhibiting developmental delays. The investigation resulted in a founded child abuse report against the parents for the denial of critical care and failure to provide adequate health care.

Around the same time, the family was struggling with J.H., who was born prematurely in early December 2021. J.H. struggled to put on weight after she was discharged from the hospital following her birth. The mother and child had to return to the hospital repeatedly in the following month to assist in increasing the child's weight. There was no known medical reason to explain J.H.'s struggle to put on weight. Some nursing staff conveyed that the mother was not consistently feeding J.H. at night. And the mother's oldest child purportedly had to wake the mother up at night to feed J.H. The situation resulted in another founded child abuse report, this time for denial of critical care and failure to provide adequate food.

J.H. and T.H. were removed from parental custody in January 2022. They were placed with the same foster family that cared for T.H. in his previous CINA case. Both children remained with this placement for the duration of these proceedings. The children have continued to require frequent medical care, mostly relating to eye and ear infections. The children's doctor believed the issues were caused by the parent's failure to consistently attend needed medical appointments

and follow through with the resulting advice, resulting in long-term issues. Both children were adjudicated CINA in June 2022 pursuant to Iowa Code section 232.2(6)(b), (c)(2) and (n) (2022). A dispositional order filed that same month continued the removal.

Because of the parents' lengthy history with the department, caseworkers established a checklist of expectations for the parents, including participating in medical appointments and ending contact with persons who were unsafe for the children to be around.[2] The parents struggled to comply with either expectation. Of the thirty-four medical appointments the two children had since June, the parents attended only eleven in person and three virtually. The HHS caseworker testified that the parents were unable to recognize when the children required medical care. Additionally, the children's physician—who recommended the children be removed from the mother's custody in January 2022—expressed concern for the children's long-term health given the parents' inability to manage the children's health care. And there were allegations that the parents had allowed at least five individuals to live with them or watch the children. Of those five, one was intellectually disabled, one was accused of physically assaulting the parents' oldest child, two had criminal records, including one for domestic abuse, and the last individual had intermittent explosive disorder.

---

[2] In a list compiled by the HHS caseworker, over fifty individuals were identified from prior assessments who had either lived with the family or were allowed to supervise the children since 2014. According to the list, four of those individuals were registered sex offenders. The mother believed three of the individuals had sexually assaulted the oldest child.

The parents also struggled to demonstrate improvements to their parenting skills. Visits that included all six of their children were described as chaotic. The parents could not supervise all the children at once, and providers had to frequently step in to prevent or stop dangerous situations. When the visits included just J.H. and T.H., the parents tended to ignore the children and attempted to discuss the case with the providers.

In its November 2022 permanency order, the juvenile court directed the State to petition to terminate the parent's parental rights to J.H. and T.H. The State petitioned to terminate the parental rights of both parents on December 1, 2022. The court conducted the termination hearing on January 26, 2023. Following the hearing, the court terminated both parents' parental rights to the children pursuant to Iowa Code section 232.116(1)(d) and (h). The mother appeals. The father does not appeal.

## II. Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III. Statutory Ground for Termination

The mother contends the State failed to establish a ground for termination under section 232.116(1). The juvenile court found the State provided clear and convincing evidence for termination under section 232.116(1)(d) and (h). On

appeal, the mother challenges the court's findings as to (h), but not (d).[3] "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the mother does not dispute the existence of a ground to terminate under 232.116(1)(d), we affirm on that ground. *See P.L.*, 778 N.W.2d at 40.

While not required, given the absence of a challenge to section 232.116(1)(d), we elect to reach the merits of the mother's challenge to section 232.116(1)(h). We determine the State provided clear and convincing evidence of a ground for termination under (h).[4] The mother only challenges the final element, whether the children could be returned at the present time.[5] *See*

---

[3] The mother also asserts insufficient evidence for section 232.116(1)(b). But the State never sought termination under (b) and, as a result, the court never ruled on that section. As such, the matter is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (explaining that to preserve error on an issue, the challenged issue must have been both raised to and decided by the trial court). And to the extent the mother claims HHS did not make reasonable efforts at reunification, the mother never raised the issue to the juvenile court. Accordingly, the matter is not preserved. *See In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015).

[4] Section 232.116(1)(h) permits the court to terminate the parent's parental rights when it has found all of the following:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[5] We note that on appeal, the mother's argument as it relates to (h), in full, was the following:

*D.W.*, 791 N.W.2d at 707 (defining "at the present time" as "at the time of the termination hearing"). The evidence is clear and convincing that the mother is not capable of safely parenting the children at the present time.

Of the thirty-four medical appointments the children attended since June, the parents attended eleven in person and three virtually, leaving twenty appointments in which the parents were not present. The children's doctor reported that the parents' inability to attend regular appointments has contributed to the children's frequent, severe medical complications, and may cause long-term damage to the children's development. Because of the children's recurring medical needs, the mother must be capable of attending medical appointments and following through with medical recommendations. Her conduct throughout the case establishes she is incapable of such. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (describing how a parent's past conduct may be indicative of future care).

Another concern relates to the mother's inability to manage the children during visits. The HHS caseworker testified that the mother is not able to recognize and prevent dangerous situations. Visits were described as chaotic. The

---

Throughout the course of the CINA cases, [the mother] made significant improvement in her parenting skills and significantly complied with the safety plan implemented by [HHS]. Based on the foregoing, the court erred in terminating the mother's parental rights because [the] mother had not abandoned the child[ren] and reasonable efforts were not made to reunite [the] mother and [the] child[ren].

Suffice it to say neither the concept of abandonment nor of reasonable efforts is implicated by section (h). We remind parties, this court will not "assume a partisan role and undertake the appellant's research and advocacy." *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974).

caseworker was asked, "If there's chaos during a visit, how is it settled?" She responded, "When there's chaos. There hasn't been a single visit where this hasn't been the case." There have been multiple instances during visits where the children engaged in dangerous behavior, during which providers had to step in to protect the children. The mother has not demonstrated an ability to safely supervise the children.

Other concerns remain as well. The mother lacks stable housing—she recently had her water shut off. There are concerns related to domestic violence within the home. And the mother allows unsafe persons to supervise the children, including adults with intellectual disabilities, those who have allegations of abusing the mother's children, and individuals with histories of violence. Taken together, the children cannot safely be returned to her custody at the present time.

## IV.     Best Interests of the Children

The mother claims termination of her parental rights is not in the children's best interests. When considering a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Termination is in the children's best interests. As described above, the mother has not demonstrated she is capable of managing the children's medical needs. The children's physician indicated the mother's inability to manage the children's appointments has increased the severity of their medical conditions, potentially leading to long term damage. The mother fails to anticipate dangerous situations during visits—she cannot safely supervise the children. And she has

continued to allow unsafe persons to supervise the children. Moreover, both children have been placed out of parental custody for much of their lives—T.H. for roughly twenty out of thirty-three months, J.H. for all but one month of her life. Both children are together in a foster home willing to adopt them. *See* Iowa Code § 232.116(2)(b). Termination is in their best interests.

**V.     Close Parent-Child Bond**

The mother claims the court should have declined to terminate her parental rights based on the close bond she shares with the children. *See* Iowa Code § 232.116(3)(c). The grounds found in section 232.116(3) "are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

We decline to apply an exception from section 232.116(3) to prevent termination. Both children are very young and have been removed from their mother's custody for a great deal of their lives, challenging the strength of the children's bond with the mother. In any event, the mother has failed to provide clear and convincing evidence that termination of her parental rights would be detrimental to the children due to the bond they share with the mother. The mother is unable to safely supervise the children or manage their medical needs. Her inability to do so has given rise to more serious medical concerns that may permanently affect the children. Termination will not be detrimental to the children.

**AFFIRMED.**